BEACH, survivor, &c. *vs.* ENDRESS and PROCTOR.

The law implies the release and discharge of a right of action, when the creditor voluntarily delivers to his debtor the bond, note or other evidence of his claim.

After the money due upon a bond or undertaking has been paid by the obligors, and receipted in full on the back of the bond by one of the obligees, and the bond delivered up to the obligors for the purpose of being canceled, no action is maintainable thereon, in the absence of any allegation of fraud or mistake.

Beach *v.* Endress.

Even if the payment made does not fulfill, completely, the measure of the obligation, it is perfectly competent for the obligees to waive the right to further performance, and surrender it to be canceled. And it having thus, by the voluntary act of the obligees, become defunct as a subsisting obligation, no subsequent occurrences can revive it in their favor, without the assent of the obligors. Hence, an action cannot be maintained thereon, even assuming that the obligees might have retained the undertaking, for further indemnity or security, had they so elected.

Where a bond is delivered up, by one of two joint obligees, to be canceled, the assent of his co-obligor will be presumed, if he makes no objection and takes no steps in a contrary direction till after the lapse of several years. Besides, the act of his joint obligee is binding upon him, and his assent need not be shówn.

ON the 24th July, 1861, Richard H. Appleby sued William Marratt in the Supreme Court, and procured an order of arrest, and the plaintiff William H. Robinson became bail on arrest. Judgment went against Marratt on the 16th January, 1862, for $351.59. Appleby thereupon sued Beach and Robinson, who then proceeded to surrender Marratt; whereupon the bond or agreement on which this action is founded, was given. Judgment was obtained by Appleby against Beach and Robinson, 7th August, 1862, for the amount of the judgment against Marratt, and an execution was issued to the sheriff of Monroe on the same day. On the 27th day of December, 1862, the defendant Endress paid the sum of $417.39 to Robinson, who gave his receipt for it upon the bond or agreement of the defendants, and delivered it up to Endress. In the meantime Marratt appealed from the judgment against him, on the 17th March, 1862, but on the 3d of July, 1863, the judgment was affirmed, and costs of appeal given, $141.35. On the 21st October, 1863, an execution to enforce this judgment issued against the property of Marratt, and was returned unsatisfied. On the 23d of November, 1863, an execution against his body was issued, which was returned *non est.* On the 16th of January, 1864, Appleby sued Beach and Robinson to recover the last named amount. September 12, 1865, judgment was recovered

against them and subsequently paid, and this action is brought to recover it of the defendants herein.

On the trial, at the circuit, the plaintiff offered in evidence a bond or undertaking, executed by the defendants, dated July 19, 1862. The defendants objected to the evidence, on the ground that the bond had been surrendered to the defendants, and was a paid bond. The court overruled the objection, and the bond was read in evidence by the plaintiff.

The bond is as follows, viz :

" Whereas, Jervis T. Beach and William H. Robinson have become security for the appearance of William Marratt, in an action brought by Richard B. Appleby against him, and, as such security, have been sued by said Appleby, and said suit is now pending ; and whereas, the said action of Appleby against Marratt has been appealed, and is to be argued before the general term of the Supreme Court. Now, therefore, the undersigned hereby agree that the said Marratt will surrender himself in the said action against said security, so as to prevent the recovery of judgment against them ; but the said security are to do nothing to hinder the undersigned Proctor from delaying a recovery in said action against the security, by stay of proceedings, or in any other manner in which the court may allow the same to be delayed, until a decision by the general term upon the appeal aforesaid. And whereas, said Robinson and Beach are now in condition to arrest said Marratt, and deliver him to the sheriff of Monroe county, and, by reason of this bond being given, said Robinson and Beach do not arrest said Marratt and surrender him to said sheriff. And it is hereby understood, that the undersigned will save harmless said Robinson and Beach from judgment being rendered against them' hereafter, upon the bond given to said sheriff to discharge said Marratt from arrest, and from any costs which may hereafter be necessarily incurred, by reason of having

signed said bond.   This bond or undertaking is made in consideration of one dollar to the undersigned, paid to said Marratt, the pay of which is hereby acknowledged.

ISAAC L. ENDRESS, [L. S.]<br>L. B. PROCTOR.      [L. S.]

Dansville, July 19, 1862."

When the plaintiff rested, the defendants offered in evidence a receipt, indorsed upon said bond or undertaking.   The receipt was read in evidence, and is in the words and figures following:

" Received of Isaac L. Endress, $417.39, being the amount in full of judgment against myself and Jervis T. Beach, as bail of William Marratt, and including two sums, of seven dollars each, costs ordered to be paid on motions, and in full of the obligations of said Endress, on the within bond or agreement.   Dec. 27, 1862.

W. H. ROBINSON."

The plaintiff Robinson died pending the suit, and before the trial, and the action was continued, by order of the court, in the name of the plaintiff Beach, as survivor.

On the trial, the facts, as above stated, were proved, and, after all the evidence on both sides had been given, the defendants' counsel moved for a nonsuit, upon various grounds, and, after argument, the court dismissed the complaint, upon the whole evidence; and, in stating the grounds of the decision, held, that the contract sued upon being executory, and there being no breach at the time it was given to the defendants, the plaintiffs could not recover upon a breach happening after that.   That if there had been an existing liability upon the bond at the time it was delivered up, the plaintiff might show that it was given by mistake, and recover.

To this decision ordering a nonsuit, the plaintiffs excepted.   A stay of proceedings was granted for sixty days,

to enable the plaintiff to make a case and exceptions, to be heard at the general term in the first instance. And if a case should be made, judgment was to be suspended until after the hearing and decision at general term.

*J. Van Voorhis,* for the plaintiff. I. This is a mistrial, and a new trial should be ordered. A case or a case containing exceptions cannot be ordered to be heard at the general term in the first instance. The general term will not review the evidence. No judgment can be ordered here. Neither can an exception to a dismissal of the complaint, or a nonsuit, be ordered to the general term in the first instance. (*Code,* § 265. *Hoagland* v. *Miller,* 16 *Abb.* 103. *Lake* v. *Artisans' Bank,* 17 *id.* 232. *Morris* v. *Brower,* 4 *Sandf.* 701. *Cronk* v. *Canfield,* 31 *Barb.* 171. 38 *id.* 117. 20 *How.* 257.)

II. The indemnity bond, if given up by fraud or mistake, is as much the property of the plaintiff, while in the defendants' hands as before. As between the parties to the instrument, it is of no consequence in whose hands the instrument is. We must assume that this bond was given up by mistake. The evidence is clear on that subject, and if not so, should have been submitted to the jury. The fact that one party or the other has possession of the paper, which contains the evidence of the contract, when a breach happens, cannot affect the rights of the parties. The fact that one party produces the paper may throw the burden of proof upon the other, but cannot affect the question of liability. The plaintiff was not required in his complaint to explain the defendants' possession of the bond, and he may recover, although the instrument sued on, is in possession of the defendant. (*Supervisors of Livingston County* v. *White,* 30 *Barb.* 72. *Selden* v. *Prindle,* 17 *id.* 468. 1 *Hilt.* 530. *Smith* v. *McClure,* 5 *East,* 476. *Garlock* v. *Geortner,* 7 *Wend.* 198.) The question is, whether he is the real party in interest. The evidence shows that Robinson gave

up the bond upon the statement to him that there was an end to the bail's liability upon the undertaking, and that the matter was all got over with. This was not true; and whether Endress knew his statement to be untrue, or whether he was honestly mistaken, makes no difference. Robinson never intended to give up or cancel the bond, while there was any farther liability. If it be claimed that the evidence of Endress conflicts with that of Garlock, then the case should have gone to the jury.

III. A less sum accepted in satisfaction of a bond cannot be pleaded as a defense. A parol discharge of a bond by an agreement to receive a less sum than the amount specified in the bond is a *nudum pactum*. (*Dewey* v. *Derby*, 20 *John*. 462. *Dederick* v. *Leman*, 9 *id*. 333. *Mechanics' Bank* v. *Hazard*, 13 *id*. 353. *Watkinson* v. *Inglesby*, 5 *id*. 391. *Johnson* v. *Brannan*, *Id*. 271. *Boyd* v. *Hitchcock*, 20 *id*. 76. 3 *Wend*. 66. 1 *id*. 164.)

*Geo. F. Danforth*, for the defendant. I. The plaintiff was properly nonsuited. The agreement upon which he sued had been canceled and given up, before the commencement of the action. No mistake or fraud was pretended. The agreement had performed its office. It is obvious from the agreement, that the judgment referred to and against which security was desired, was the judgment which might follow in the action pending when it was given. The action did ripen into a judgment, on the 7th August, 1862, and on the 27th of December, 1862, the defendants paid it and other moneys. There was, at the time the agreement was given up, no other breach, but by the omission to surrender Marratt, the condition of the bond was broken.

II. The writing signed by the plaintiff Robinson, on receiving the money; is a full and valid discharge, (1.) Of the amount of the judgment. (2.) Of certain motion costs. (3.) "And in full of the obligations of the said Endress on the within bond or agreement." It was competent for

the parties to agree that this obligation should be given up, with or without consideration; the plaintiffs could say that whatevever further risk there was on account of Marratt, they would assume. The plaintiff, in so many written words, acknowledged the receipt of the money paid, as "in full of the obligations of said Endress on the bond or agreement," and also surrendered or gave up the bond. This discharged the defendants from any further responsibility upon the agreement. In 2 *Equity Cases*, (*Abr.* 617,) Lord Hardwick is reported .as saying: "If an obligee delivers up a bond with intent to discharge the debt, the debt will certainly be thereby discharged." (*Wentz* v. *Dehazen*, 1 *S. & R.* 317. *Picot* v. *Sanderson*, 1 *Dev.* 309. *Licey* v. *Licey*, 7 *Barr*, 251. *Albert* v. *Ziegler*, 29 *Penn. Rep.* 50.) No consideration was necessary to support such a transaction, for it was executed. But, if otherwise, it exists. 1. If the undertaking on the part of Beach and Robinson, "not·to arrest" said Marratt and surrender him, has any application to proceedings other than those contemplated when the agreement was given, then by canceling or giving up the bond or agreement, Beach and Robinson acquired the right to arrest Marratt, if it had in the mean time been suspended, and that right might have been exercised at the very time of giving up the agreement, for Marratt and Robinson were both present. 2. The sum of $417.39 was paid and received, not more for the judgment and motion costs, than it was "in full of the obligations of Endress," upon the bond. The consideration applies to each and all. The rule of the common law, that a sealed instrument can only be released by an instrument of equal dignity with the original, has no application to the case of an executed agreement; nor to one where the original instrument itself is delivered to the person bound; nor to one where the condition was broken. (7 *Cowen*, 224. 27 *Barb.* 485.) If a debt or duty is created by giving to the obligee an instrument, sealed or unsealed, it may be

discharged by an act of " contrary significance," as its delivery up by the obligee to the obligor. (*Shepherd's Touchstone*, 327.) Nor is such rule now enforced. Performance of a covenant may be waived by parol, and so may it be discharged. (*Friess* v. *Rider*, 24 *N. Y. Rep.* 369. *Stone* v. *Sprague*, 20 *Barb.* 515. *Dearborn* v. *Crass*, 7 *Cowen*, 48–51.)

III. The transaction was perfect as an accord and satisfaction with Endress, and so discharged both obligees. (*Parsons on Contracts, p.* 23, *and cases cited, note i. Milliken* v. *Brown*, 1 *Rawle*, 391.)

IV. For the above reasons, a new trial should be denied, and judgment ordered on the verdict.

*By the Court*, JOHNSON, J. I am clearly of the opinion that the nonsuit was properly granted. The action is sought to be maintained upon an undertaking which had been receipted in full and delivered up to the obligors, by the obligees, more than three years before such action was commenced. No fraud, or mistake of fact, by way of inducement to the obligees, to deliver up the obligation, is alleged or proved. At the time of the redelivery the defendant Endress paid the amount of a certain judgment which had been recovered against the obligees, together with certain motion costs, and the same was receipted on the back of the undertaking, and the receipt in terms specifies that the same is "in full of the obligations of said Endress in the within bond or agreement." The money was received by Robinson, one of the obligors, or by the sheriff who held the execution issued upon the judgment against them, and in the presence of their attorney in the action, or with his knowledge and assent, and the receipt was signed by Robinson only. Apparently it was surrendered and delivered up for the purpose of having it canceled, and as a satisfied and extinguished demand, and nothing whatever is shown to the

contrary. Upon such a state of facts no action is maintainable upon the obligation. Having been delivered back by the obligees to the obligors for the express purpose of relinquishing any and all further claims, it had no longer any vitality or binding force between the parties. It is laid down in *Shepherd's Touchstone, p.* 70, " and if a deed (viz. a bond) be delivered up to the party that is bound by it, to be canceled, and it be so; or if he that hath the deed doth by agreement between him and the other cancel the deed; by either of these means the deed (provided no estate passed) is become void." It is further added : "But if an obligee deliver up an obligation to be canceled and the obligors do not afterwards cancel it; but the obligee happen to get it again, into his hands, and sue the obligors upon it, the obligor hath not any plea to avoid it, for the deed remains still in force in law, (but the obligee [obligor ?] would be relieved in equity.")

The law implies the release and discharge of a right of action, where the creditor voluntarily delivers to his debtor the bond, note or other evidence of his claim. (*Poth. Obl. n.* 608, 609. *Bouv. Law Dic. title Release.*) It has been expressly held by the Supreme Court of Pennsylvania, that the cancellation of a bond, or delivery to the obligor with that intent, discharges the debt. (*Licey* v. *Licey,* 3 *Barr,* 251. *Albert* v. *Zeigler,* 29 *Penn. Rep.* 50.)

Even if the payment made did not fulfill completely the measure of the obligation, it was perfectly competent for the obligees to waive the right to further performance, and surrender it to be canceled. Having thus by the voluntary act of the obligees, become defunct as a subsisting obligation, no subsequent occurrences could revive it in their favor, without the assent of the obligors. This action cannot therefore be maintained, even assuming that the obligees might have retained the undertaking for further indemnity, or security, had they so elected, after the payment of the judgment against them by the obligors.

But I am of the opinion that the undertaking only related to the action then pending against the obligees in favor of Appleby. They were in default in their undertaking on account of Marratt having failed to render himself amenable to the process of the court, and had been prosecuted therefor. They might have relieved themselves by paying the judgment against Marratt, or by surrendering him. But they had done neither, and the action had been brought, and it was manifestly against their liability, involved in the then pending action, that the defendants intended and undertook to indemnify and save them harmless. This is apparent, I think, from the whole tenor of the undertaking. No other or further liability was contemplated or apprehended, and consequently there was no reason why any other should be provided for. The language of the undertaking is to be interpreted in the light of the state of things then existing. That the parties on both sides so understood it, is clear beyond all peradventure. The action against the obligees resulted in a judgment, and execution was issued against them and placed in the hands of the sheriff, and when one of the defendants went and paid up the execution and all the costs to which the obligees had been subjected in the course of that litigation, the undertaking was receipted in full, and given up to be canceled as an obligation satisfied and fulfilled entirely. No one connected with the matter at that time, seems to have entertained any doubt upon the subject, and no other or further claim was made or hinted at. This ought to be conclusive on this question. It is now said that the plaintiff Beach was not present so as to assent to it. But his assent must be presumed, as he made no objection and took no steps in a contrary direction till after the lapse of several years. And besides, the act of his joint co-obligee was binding upon him, and his assent need not be shown. ( *Wallace* v. *Kelsall,* 7 *Mees. & Wels.* 264.) I conclude, therefore, that the defendants

were entitled to have the fund delivered up as it was, the moment the payment was made, as a paid or fulfilled and satisfied instrument, and that the obligees had no right to retain it for any purpose.

When Marratt failed to render himself amenable to the process to enforce the second judgment, three years and over, after the undertaking in question had been given up, the remedy of this plaintiff and Robinson, was, to surrender Marratt instead of undertaking to revive the extinct undertaking of the defendants. Their right to surrender was then complete. For although it may have been suspended during the life of the defendants undertaking, for causes existing at that time, or up to the time of giving it, it was fully restored, if indeed it had ever been suspended, as to all subsequent defaults on the part of Marratt.

A new trial should therefore be denied.

[MONROE GENERAL TERM, September 7, 1868. *E. D. Smith, Johnson* and *J. C. Smith*, Justices.]